**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALISAN FINE ART CO. LTD., | ) | |
| | ) | Case No. 26- |
| Plaintiff, | ) | |
| | ) | Judge: |
| v. | ) | |
| | ) | |
| GREATGIFTERS LLC and SUNNIES STUDIO CO. LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff hereby files this Complaint for, *inter alia*, (1) federal trademark infringement, (2) unfair competition and false designation of origin, and (3) deceptive trade practices under Illinois state law against Defendants Greatgifters LLC and Sunnies Studio Co. Ltd. based on Plaintiff's investigation and activities, and in further support states as follows:

**PARTIES**

1. Plaintiff Alisan Fine Art Co. Ltd. is a limited company based in Hong Kong. Plaintiff designs and manufactures branded products bearing its registered trademarks, including US TM Reg. No. 6539064 for the mark "ZEW" (the "Mark"), sells its branded products online, and licenses the use of its registered trademarks to a small number of trusted partners.

2. Defendant Greatgifters LLC ("Greatgifters") is a designer and online retailer, primarily of quilts. Greatgifters is organized as a limited liability company under the laws of the State of Wyoming, with a registered address of 1309 Coffeen Ave, Ste 1200, Sheridan, WY 82801 USA.

3. Defendant Sunnies Studio Co. Ltd. ("Sunnies" and, collectively with Greatgifters, the "Defendants") is organized as a limited company under the laws of Hong Kong, with an address of

Unit 308, 3/F Chevalier House, 45-51 Chatham Road South, Tsim Sha Tsui, Kowloon, Hong Kong.

4. On information and belief, Sunnies owned, managed, operated, financed, and benefited from the operations of Greatgifters.

5. Defendants conducted its business operations through fully interactive commercial websites, including, *inter alia*, www.quiltara.com, using online payment processors, including Stripe, Klarna, Google Pay or "GPay", PayPal, UnionPay, and various credit card processors, and used banking intermediaries to convert online sales proceeds from USD to foreign currencies, and to transfer those proceeds to accounts based outside of the United States.

6. Defendant target consumers in the United States, including Chicago, Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's Mark (the "Counterfeit Goods").

7. Defendants have the capacity to be sued in the District pursuant to Federal Rule of Civil Procedure 17(b).

8. Through its online business operations, Defendants are directly contributing to, inducing, and engaging in the sale of Counterfeit Products oftentimes as partners, co-conspirators and/or suppliers.

9. Plaintiff has not authorized Defendants to use the Mark.

10. On information and belief, Defendants have used the Mark to sell Counterfeit Products in Illinois, this District, the United States, and around the world.

11. Prior to filing this lawsuit, Plaintiff notified Defendants of their violation of Plaintiff's rights under the Mark.

12. The Parties' extended negotiations to resolve the matter have reached a stalemate, necessitating this lawsuit to protect Plaintiff's registered rights under the Mark granted by the United

States Patent and Trademark Office.

## JURISDICTION AND VENUE

13. This is an action for trademark counterfeiting, trademark infringement, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§1051, *et seq*., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

14. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. §1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

15. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in the District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

## BACKGROUND

17. A copy of the Plaintiff's registration with the United States Patent and Trademark Office for the Mark is attached as Exhibit A.

18. Plaintiff manufactures, market-tests, and sells products through its own online

webstores and licenses the use of the Mark to a limited number of manufacturers and resellers around the world (collectively, the "Products").

19. The presence of the Mark increases the marketability and value of the Products by increasing brand awareness and consumer confidence.

20. Defendants' advertising, marketing, and sale of the Counterfeit Products in violation of Plaintiff's intellectual property rights is causing irreparable damage to the Plaintiff, its Mark, and its brand.

21. Plaintiff is the owner of all rights, title, and interest in and to the Mark. The registration is valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. §1065. The registration for the Mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the Mark pursuant to 15 U.S.C. §1057(b).

22. The "ZEW" brand, symbolized by the Mark, is a recognized symbol of high-quality products covered by Primary Class – 025, which applies to products in the following categories: "Bras; Gloves; Jeans; Pullovers; Scarfs; Shoes; Shorts; Sleepwear; Socks; Underpants; Underwear; Athletic uniforms; Baseball caps; Belts; Ear muffs; Jackets; Ladies' suits; Shower caps; Skirts; Sleep masks; Sports bra; Swim trunks; Swimming caps; Tee shirts; Waistbelts."

23. As detailed below, Plaintiff has been using the Mark for many years in connection with the advertising and sale of its Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

24. The Mark has been widely promoted, both in the United States and throughout the world. Consumers, potential consumers, and other members of the public not only associate Products bearing the Mark with exceptional design, unique style, and prestige, but also recognize Products sold in the United States or to customers located in the United States are approved by Plaintiff.

25. The Marks have never been abandoned by Plaintiff.

26. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Mark.

27. At all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

28. Defendants' use of the Mark on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

29. Defendants have offered for sale and sold Counterfeit Products using the Mark, and will continue to do so absent legal action.

26. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Mark in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, *inter alia*, the Internet. The Counterfeit Products are not genuine Products.

27. Defendants offer shipping to the United States, including Illinois, which Plaintiff has confirmed by making a "test purchase" of several Counterfeit Products from the Defendants' webstore by and shipped to a customer located in the State of Illinois and this District.

28. Defendants also deceive unknowing consumers by using the Mark without authorization within the content, text, and/or meta tags of the listings on websites and webstores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Products and in consumer product searches within the Webstores.

29. Upon information and belief, Defendants create websites and webstores on various

online platforms using unknown, unrelated, and fictitious names and addresses.

30. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Products that infringe upon the Mark unless preliminarily and permanently enjoined.

31. Plaintiff has no adequate remedy at law.

**COUNT ONE**

**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. §1114)**

32. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

33. The Mark and the goodwill of the brand associated with it in the United States and throughout the world are of great and incalculable value. The Mark is highly distinctive and has become universally associated in the public mind with high-quality Products. Because of the investment in the brands represented by the Mark, Plaintiff is able to charge increased licensing fees to manufacturers and distributors.

34. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Mark and the fact that Defendants' Counterfeit Products are sold using marks which are identical or confusingly similar to the Mark, the Defendants have manufactured, distributed, offered for sale and/or sold Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Products, in or affecting interstate commerce.

35. Defendants' use of copies or approximations of the Mark in conjunction with advertisement and sale of Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and

is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and commissions.

36. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. §1125(a))

37. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

38. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the products sold and offered for sale using the Mark and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

39. By misappropriating and using the Mark, Defendants misrepresent and falsely describe to the public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

40. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

41. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), in that Defendants' use of the Marks in connection with goods in interstate commerce constitutes a false designation of origin and unfair competition.

42. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE

## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510)

43. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the products sold and offered for sale under the Plaintiff's brand and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

45. By misappropriating and using the Mark, Defendants misrepresent and falsely describe to the public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

46. Defendants' unlawful, unauthorized, and unlicensed offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

47. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*., in that Defendants' use of the Mark in connection with their goods in interstate commerce, constitutes a false designation of origin and unfair competition.

48. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i) using the Mark or any reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of the Plaintiff;

(ii) passing off, inducing, or enabling others to sell or pass off any Counterfeit Products as genuine products licensed and endorsed by the Plaintiff;

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing the Mark and damaging Plaintiff's goodwill and competing unfairly with Plaintiff in any manner;

(v) shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory authorized by Plaintiff to be sold or offered for sale, and that bear the Mark or any reproductions, counterfeit copies, or colorable imitations thereof;

(vi) using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(vii) operating and/or hosting websites at the Infringing Webstores and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Marks or any reproduction, counterfeit copy, or colorable imitation thereof to be sold in connection with the Mark; and,

(viii) registering any additional domain names that use or incorporate any of the Mark.

2. That Defendants, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

3. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Mark;

4. That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. §1117;

5. In the alternative, that Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's Mark counterfeited by Defendants;

6. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7. Grant Plaintiff such other and further legal relief as may be just and proper under the circumstances.

Respectfully submitted,

By: /s/ Patrick M. Jones
One of the Attorneys for
Plaintiff

**PMJ PLLC**
Patrick M. Jones (IL #6271256)

332 South Michigan Avenue
Suite 121, #5413
Chicago, Illinois 60604

and

The Department
One North First Street
Phoenix, Arizona 85004

Tel: (312) 404-3225
E-mail: pmj@pmjpllc.com